**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK SCHEFLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKON AMERICAS INC. and NIKON INC.,<br><br>Defendants. | Case No. 2:26-cv-5455<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark Scheflen ("Plaintiff") through undersigned counsel, brings this Class Action Complaint against Defendants Nikon Americas Inc. and Nikon Inc. (collectively, "Defendant" or "Nikon"), and in support thereof alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action to halt and remedy Defendant's retention of windfall proceeds tied to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, which Defendant passed onto consumers in the form of increased pricing and which Defendant now stands to recover from the federal government through litigation and court-ordered refunds.

2. Because only the importer of record can obtain tariff refunds from the government, and because consumers frequently shoulder the ultimate economic burden of the previously imposed tariffs through higher retail prices, Defendant's approach results in a structural mismatch between injury and recovery that leaves consumers uncompensated. Put simply, while the importer fronts the tariff-related cost, the consumer ultimately pays it.

3. On February 20, 2026, the U.S. Supreme Court issued its decision in *Learning Resources, Inc. v. Trump*, where it held that the "IEEPA does not authorize the President to impose tariffs," thus striking down the IEEPA-based tariffs. 607 U.S. 229, 255 (2026).

4. Shortly thereafter, on March 4, 2026, in *Atmus Filtration, Inc. v. U.S.*, Judge Richard Eaton of the U.S. Court of International Trade ordered that, in light of the Supreme Court's *Learning Resources* decision, "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties."[1] Thus, as a result of the order, the U.S. government must "begin paying potentially billions of dollars in refunds to importers who paid tariffs that the Supreme Court said last month were collected illegally."[2]

5. Following Judge Eaton's order, U.S. Customs and Border Protection ("CBP") launched "the first phase of the Consolidated Administration and Processing of Entries (CAPE) tool," which "will simplify the International Emergency Economic Powers Act (IEEPA) duty refund requests made pursuant to court order and in accordance with appropriate statutory authority by providing an electronic pathway to submit valid IEEPA duty refund claims."[3]

---

[1] *Atmus Filtration, Inc. v. U.S.*, Case No. 1:26-cv-01259-RKE, ECF No. 21, at 2-3 (2026). The Court issued an amended order on March 5, 2026, ECF No. 29, which added the bolded language. ("Accordingly, it is hereby ORDERED that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties." (emphasis added). *See id.* at ECF No. 29.

[2] David Lawder & Tom Hals, *Judge Orders US Customs to Process Refunds on Illegal Trump Tariffs*, REUTERS (Mar. 4, 2026), https://www.reuters.com/world/us/judge-orders-trump-administration-finalize-goods-entering-us-without-assessing-2026-03-04/.

[3] Consolidated Administration and Processing of Entries (CAPE) Phase 1, U.S. CUSTOMS & BORDER PROT. (Apr. 8, 2026), https://www.cbp.gov/sites/default/files/2026-04/trade_information_notice_cape_508c.pdf.

6. By April 26, 2026, less than a week after the portal was launched, CBP had received "more than 75,000 refund requests from U.S. businesses and other importers[,]" with "[m]ore than 47,000 claims encompassing some 11 million payments" filed.[4]

7. Despite the Supreme Court's invalidation of IEEPA-based tariffs, the persons who actually bore the tariff burden—Defendant's customers—have no recourse in the Court of International Trade ("CIT"), where Defendant, as importers of record, is pursuing litigation to recoup all such duties.[5]

8. Companies, even those which passed the entirety of their tariff burdens onto their customers, nonetheless remain fully empowered to recover a complete refund for any unlawful tariffs paid. Because U.S. customers are paying an estimated two-thirds of tariff-related costs, companies, including Defendant, stand to obtain an improper double recovery, absent restitution to their customers.[6]

9. This lawsuit seeks to prevent Defendant Nikon from double recovery. Though it filed actions in the CIT, Nikon has made no commitment to return any portion of the anticipated tariff refunds to the consumers who ultimately paid such costs.

10. Plaintiff seeks an order requiring Defendant to disgorge and return to Plaintiff and the Class all IEEPA-related costs embedded in elevated consumer prices with interest.

---

[4] Megan Cerullo, Feds Have Rejected 15% of Businesses' Tariff Refund Claims, CBS NEWS (May 1, 2026), https://www.cbsnews.com/news/tariff-refund-portal-trump-cbp/.

[5] *See Nikon Inc. v. United States*, No. 1:26-cv-02459 (Ct. Int'l Trade Mar. 24, 2026); *Nikon SLM Sols. NA, Inc. v. U.S. Customs & Border Prot.*, No. 1:26-cv-02452 (Ct. Int'l Trade Mar. 24, 2026).

[6] *See* Nick Lichtenberg, *Goldman Sachs Doubles Down on Tariff Research that Infuriated Trump, Saying Average Americans Will Bear Two-Thirds of the Costs*, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

11. Plaintiff and the Class are entitled to restitution of the tariff-related overcharges they paid or a proportionate share of any tariff refunds Defendant recovers, along with interest and attorneys' fees and costs.

12. Plaintiff and the Class members suffered an immediate, concrete economic injury at the point of sale: they paid more for Nikon's goods than they would have paid but for the IEEPA tariffs. That injury does not depend on whether Defendant has applied for, will apply for, or ever receives any refund of the tariffs from the federal government.

13. The measure of that injury is the tariff-driven price premium − the difference between the prices Plaintiff and the Class members actually paid during the Relevant Time Period and the prices Defendant would have charged absent the IEEPA tariffs. The amounts Plaintiff and the Class paid to cover the IEEPA tariffs have since been adjudged never to have been lawfully owed. Each dollar of that premium came out of the consumer's pocket and conferred a corresponding benefit on Defendant.

14. Any refund Defendant obtains does not create Plaintiff's injury; it compounds the inequity by allowing a second recovery of the very same tariff cost that Defendant's customers already bore.

## PARTIES

15. Plaintiff Mark Scheflen is, and at all times relevant was, a citizen and resident of New York. During the Relevant Time Period, defined *infra*, Plaintiff purchased multiple Nikon products and paid heightened prices as a result of Nikon's tariff-related price hikes.[7]

---

[7] After Nikon implemented its tariff-related price adjustments on June 23, 2025, Plaintiff purchased a Nikon ZR Cinema Camera on October 21, 2025; a Nikon Nikkor Z 24-120MM F/4 S Lens/77MM FLT on November 30, 2025; and a Nikon rechargeable Lithium-Ion Battery on December 6, 2025. All purchases were made from B & H Photo & Video, an authorized Nikon Dealer.

16. Defendant Nikon Americas Inc. is a Delaware corporation, with its principal place of business at 1300 Walt Whitman Road, Melville, New York 11747-3064. It operates as a holding company and the primary U.S.-based subsidiary through which the Japanese parent company, Nikon Corporation, operates. According to Nikon, Nikon Americas Inc.'s business primarily consists of "[c]entralized supply, administration and management of funds of affiliates in the U.S."[8]

17. Defendant Nikon Inc. is a New York corporation, with its principal place of business at 1300 Walt Whitman Road, Melville, New York 11747-3064. According to Nikon, Nikon Inc.'s business primarily consists of the "[i]mport, sales and servicing of cameras."

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000.00, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant.

19. This Court has general personal jurisdiction over Defendants Nikon Americas Inc. and Nikon Inc. because each maintains its principal place of business in New York, within this District, at 1300 Walt Whitman Road, Melville, New York, and Nikon Inc. is also incorporated in New York. This Court has specific personal jurisdiction over each Defendant because each purposefully directs business into New York—importing, marketing, distributing, and selling Nikon products (and setting the minimum advertised prices at which those products are sold) to consumers in New York through authorized dealers such as B&H Photo & Video, from whom

---

[8] Nikon Group Companies, NIKON, https://www.nikon.com/company/corporate/group/#america (last visited Aug. 31, 2026).

Plaintiff purchased—and Plaintiff's claims arise out of that New York-directed conduct. Each Defendant conducts substantial and continuous business in New York and regularly ships goods to and from New York.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, *inter alia*, Defendant is subject to the personal jurisdiction of this District, transacts substantial business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

## FACTUAL BACKGROUND

### A. Defendant's Business

21. Founded in 1917, Nikon is one of the world's largest photography and imaging companies, with various fields of business, including "Imaging Products (digital cameras and interchangeable lenses), Precision Equipment (FPD lithography systems and Semiconductor lithography systems), Healthcare (microscopes and retinal diagnostic imaging systems), Components (optical components, EUV related components, etc.), Industry Metrology, and Digital manufacturing (industrial machinery and optical processing machines)[9].

22. Nikon maintains an international supply chain, as its "component parts and a small portion of the final products are supplied from procurement partners, in and outside of Japan."[10] As such, over 90% of Nikon's procurement partners are based in Japan, China, and Southeast Asia.[11] Thus, imported goods make up the vast majority of products Nikon sells in the United States.

---

[9] *Nikon Group Slavery and Human Trafficking Statement for the fiscal year ended March 2025*, NIKON, https://www.optos.com/globalassets/public/optos/2025-ukmsa.pdf (last visited Sept. 1, 2026).

[10] *Id.*

[11] *Id.*

23. Additionally, Nikon sets minimum advertised prices on its products that its authorized dealers[12] must abide, effectively maintaining control over the pricing of its products, regardless of what entity they are sold through.

24. In fiscal year 2025, Nikon generated ¥7.15B in revenue.[13]

**B. Implementation and Invalidation of the IEEPA-based tariffs**

25. Starting in February 2025, the Trump Administration issued a series of executive orders imposing tariffs on goods from most foreign countries, pursuant to the IEEPA and predicated on a purported national emergency. Among the targeted countries were prominent U.S. trading partners like Canada, Mexico, and China.

26. As part of the IEEPA-based tariffs, the Trump Administration imposed a baseline tariff of 10% on nearly all imports, as well as tariffs of up to 145% on goods imported from China.

27. On February 20, 2026, approximately one year after the Trump Administration first began imposing them, the Supreme Court issued its decision invalidating all IEEPA-based tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255.

28. Subsequently, President Trump issued an Executive Order terminating the tariffs and, on February 22, 2026, U.S. Customs and Border Protection ("CBP") announced that it would cease collection of all IEEPA-based tariffs, beginning on February 24, 2026.

29. In sum, the IEEPA-based tariffs were applied between February 1, 2025 and February 24, 2026 (the "Relevant Time Period").

---

[12] *See* Authorized Nikon Dealers as of 09/01/2026, NIKON, https://www.nikonusa.com/where-to-buy/nikon_img_auth_dealers.pdf (last visited Sept. 1, 2026).

[13] Consolidated Financial Statements, NIKON CORP., https://www.nikon.com/content/dam/web-assets/nikoncom/company/local/global/en/ir/ir_library/fs/pdf/2025/fs2025.pdf (last visited Sept. 1, 2026).

### C. Nikon's IEEPA-Based Price Increases

30. The IEEPA tariffs increased costs associated with finished products for retailers and manufacturers alike, including Nikon. A survey of American CEOs found that, in response to the IEEPA tariffs, a majority had already raised prices or were strongly considering it.[14] Moreover, analyses of retail pricing found that prices rose on imported goods as well as domestically produced goods, as retailers attempted to spread IEEPA tariff costs across their entire product lines.[15]




31. Defendant Nikon is a major importer, with a majority of its sales in the United States attributable to international imports. Upon information and belief, Nikon, directly or through its affiliates, served as the importer of record for Nikon products imported into and sold in the United States during the Relevant Time Period, and in that capacity paid the IEEPA-based duties assessed on those imports to CBP.

32. As such, Nikon was particularly vulnerable to the IEEPA tariffs.

---

[14] Ali McCadden, *Here Are the Retailers Raising Prices as Trump Tariffs Take Hold*, CNBC (May 31, 2026), https://www.cnbc.com/2025/05/31/trump-tariffs-here-are-the-retailers-raising-prices.html.

[15] Alberto Cavallo et al., *Are Tariffs Raising U.S. Retail Prices?*, ECONOFACT (Dec. 4, 2025), https://econofact.org/are-tariffs-raising-u-s-retail-prices.

33. Recognizing this, Nikon made the decision to increase its U.S. retail prices, effective June 23, 2025.[16]

34. As a direct result of Nikon's pass-through pricing, Plaintiff and Class Members paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs.

**D. Defendant's Litigation and Anticipated IEEPA Windfall**

35. On March 24, 2026, Defendant filed multiple actions in the Court of International Trade ("CIT") to recover IEEPA refunds. *Nikon Inc. et al. v. U.S. et al.*, Case No. 1:26-cv-02459-N/A (Ct. Int'l Trade March 24, 2026); *Nikon SLM Sols. NA, Inc. v. U.S. Customs & Border Prot. et al.*, Case No. 1:26-cv-02452-RKE (Ct. Int'l Trade March 24, 2026).

36. Following the Supreme Court's *Learning Resources* decision striking down IEEPA tariffs, the Court of International Trade ordered CBP to liquidate or reliquidate entries without regard to IEEPA duties, recognizing importers' entitlement to the benefit of its ruling.

37. The IEEPA-based tariffs caused the collection of approximately $166 billion in duties. And as a major U.S. importer, Defendant stands to receive refunds in the tens of millions of dollars.

38. As shown by its lawsuits before the CIT, Defendant was well aware of the numerous challenges to the legality of the IEEPA tariffs. Despite that awareness, Nikon deceived U.S. consumers by failing to inform them that it would not refund duties paid by consumers to cover the IEEPA tariffs, even if they were later declared unlawful.

39. These funds were wrongfully taken from consumers to cover IEEPA tariffs that have since been declared unlawful.

[16] *Notice regarding price changes*, NIKON (May 23, 2025), https://www.nikonusa.com/press-room/notice-regarding-pricing-changes.

## CLASS ALLEGATIONS

40. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class and Subclass (collectively, the "Class," except where the context requires otherwise):

> **Nationwide Class**
> All individuals in the United States who purchased, through any retail channel, any Nikon product subject to the IEEPA-based tariffs during the Relevant Time Period.
>
> **New York Subclass**
> All members of the Nationwide Class who purchased any Nikon product in the State of New York during the Relevant Time Period.

41. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments; and the judge(s) presiding over this matter and the clerks and family members of said judge(s).

42. Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

43. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. **Numerosity**: The Members of the Class are so numerous that joinder of all members in a single proceeding would be impracticable. Defendant operates numerous locations across the United States, sells millions of products monthly, and serves millions of customers. Thus, upon information and belief, the proposed Class includes tens of thousands of individuals who purchased goods subject to the IEEPA-based tariffs during the Relevant Time Period.

45. **Typicality**: Plaintiff's claims are typical of the claims of the Class that Plaintiff seeks to represent. Plaintiff, like all proposed members of the Class, purchased goods from Defendant that were imported from countries subject to IEEPA tariffs at prices inflated by Defendant's pass-through pricing. Plaintiff and members of the Class were injured by the same price increases. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all members of the Class.

46. **Adequacy**: Plaintiff will fairly and adequately protect the interests of members of the Class. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

47. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any potential questions affecting only individual members of the Class. Such common questions of law or fact include, *inter alia*:

a. Whether increased prices paid by Defendant's customers were attributable to IEEPA tariffs;

b. Whether Defendant must refund tariff-related duties to customers who had paid them in the form of increased prices;

c. Whether Defendant's retention of increased consumer payments related to IEEPA tariffs constitutes unjust enrichment;

d. Whether Defendant's conduct has harmed Plaintiff and the Class uniformly;

e. The measure of damages available to Plaintiff and the Class for paying increased prices caused by Defendant's tariff pass-through; and

f. Whether Plaintiff and the Class are entitled to restitution, damages, treble damages, or injunctive relief; and

g. Whether Defendant's conduct violated New York General Business Law § 349.

48. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individuals are insufficient to make individual lawsuits economically feasible. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

49. Plaintiff realleges and incorporates the above allegations as if fully set forth below. Plaintiff brings this Count, and Count II, in the alternative to Plaintiff's statutory claim, and on the basis of an equitable obligation that arises independently of any contract between Plaintiff and Defendant.

50. Defendant increased the prices charged to Plaintiff and Class Members to recoup costs and duties associated with tariffs imposed pursuant to the IEEPA during the Relevant Time Period, thereby shifting the tariff-related costs to Plaintiff and Class Members through higher transaction prices.

51. By paying the inflated prices, Plaintiff and Class Members enriched Defendant at their own expense, conferring a monetary benefit upon Defendant in the form of the tariff-related price premium embedded in the prices charged.

52. The connection between Plaintiff and Class Members, on the one hand, and Defendant, on the other, is direct and not attenuated. Nikon is the importer that paid the IEEPA duties and set the tariff-driven price increases; through its minimum-advertised-price policy, Nikon controlled the retail prices of its products regardless of the entity through which they were sold; and the money Plaintiff and Class Members paid for Nikon products—including purchases through Nikon's authorized dealers—flowed to and was retained by Nikon. Plaintiff purchased Nikon products from an authorized Nikon dealer at the prices Nikon set.

53. Defendant had knowledge of, appreciated, and voluntarily accepted this benefit because Defendant (a) intentionally implemented price increases for the stated purpose of recouping IEEPA tariff costs, and (b) retained the proceeds from those increases paid by Plaintiff and Class Members.

54. The tariff-related price premium was not consideration for any product, service, or other value Defendant provided. It represented amounts attributable to IEEPA duties that have been adjudged never to have been lawfully owed, and that Defendant has sued to recover, and will recover, from the federal government. Plaintiff and Class Members thus received less than what they paid for, and Defendant's retention of the premium is inequitable notwithstanding the goods Plaintiff and Class Members received.

55. Allowing Defendant to retain the tariff-related price premium collected from Plaintiff and Class Members—amounts that were never lawfully owed—while also recovering the

same duties from the federal government would result in a double recovery to Defendant for the same tariff costs.

56. Equity and good conscience require that Defendant not be permitted to retain the tariff-related price premium it obtained from Plaintiff and Class Members. Defendant's pursuit and anticipated recovery of the same duties from the federal government make retention of that premium doubly inequitable; but Plaintiff's and the Class's right to restitution does not depend on whether Defendant obtains any such refund.

57. Defendant's retention of the tariff-related price premium conferred by Plaintiff and Class Members, without providing restitution or disgorgement, is unjust, inequitable, and contrary to principles of fairness.

58. Plaintiff and Class Members lack an adequate remedy at law to prevent Defendant's unjust enrichment because, absent equitable relief, Defendant will retain amounts collected from Plaintiff and class members that duplicate the amounts Defendant has been, or will be, reimbursed through its litigation recovery for the same tariff-related costs.

59. Accordingly, Plaintiff and Class Members seek restitution and/or disgorgement from Defendant in an amount equal to the tariff-related price premium embedded in the prices they paid, together with pre- and post-judgment interest, and such other and further equitable relief as the Court deems just and proper. Any refund Defendant recovers from the federal government for the same duties is an additional measure of the amount that, in equity, must be restored to Plaintiff and Class Members—not a precondition to that relief.

**COUNT II**
**MONEY HAD AND RECEIVED**
**(On Behalf of Plaintiff and the Class)**

60. Plaintiff realleges and incorporates the above allegations as if fully set forth below.

61. This Count concerns the money Defendant received from Plaintiff and the Class through the tariff-related price premium embedded in the inflated prices they paid during the Relevant Time Period—money collected to cover IEEPA duties that were never lawfully owed and that, in equity and good conscience, belongs to Plaintiff and the Class. Plaintiff brings this Count in the alternative to Plaintiff's statutory claim.

62. To the extent Defendant receives a refund of those tariffs from the government, that refund in fairness represents a return of amounts economically borne by Plaintiff and the Class rather than by Defendant, and Defendant's retention of both the price premium and the refund would compound the inequity. Defendant's receipt of any refund is not, however, a condition of Plaintiff's recovery.

63. Defendant received money from Plaintiff and the Class in the form of inflated prices they paid during the Relevant Time Period as a result of Defendant passing off its IEEPA-based tariff costs to its customers.

64. The purpose of its receiving this money through its inflated pricing was to pay IEEPA-based duties.

65. The Supreme Court has since concluded that the IEEPA-tariffs were unenforceable and that the Trump Administration lacked the authority to impose them.

66. The money that Defendant's customers paid as a result of the inflated prices related to the IEEPA tariffs rightfully belongs to Plaintiff and the Class.

67. Defendant has not returned the money, nor has it represented that it has any intention of doing so.

68. The principles of equity and fairness demand that Defendant return the money its customers paid as a result of inflated prices, which Defendant imposed in order to financially shield itself from the IEEPA-based tariffs.

**COUNT III**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

69. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70. The Declaratory Judgments Act, 28 U.S.C. §§ 2201, *et seq.* authorizes courts to declare rights, status, and other legal relations so as to afford litigants relief from uncertainty and insecurity.

71. An actual controversy has arisen in the wake of Defendant's willful retention of its IEEPA-related tariff price increases, which were borne by Defendant's customers, including Plaintiff and the Class.

72. Plaintiff seeks a declaration that a business's pursuit or receipt of a refund from the federal government, for amounts paid to offset any or all of the IEEPA-based tariffs, is not a condition, precondition, or prerequisite to a consumer's right to seek and recover from that business the amounts the consumer paid, through inflated prices, to offset those same IEEPA-based tariffs and duties. This controversy concerns amounts Plaintiff and the Class have already paid and is ripe for resolution now.

**COUNT IV**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the New York Subclass.

75. New York General Business Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

76. Defendant's conduct was consumer-oriented. Defendant applied its tariff-related price increases and minimum-advertised-price policy uniformly to Nikon products sold to the consuming public at large, and its pricing and non-disclosure practices had a broad impact on New York consumers generally, not in any single private transaction.

77. Defendant engaged in materially misleading and deceptive acts and practices by charging Plaintiff and the New York Subclass prices inflated to pass through the IEEPA-based tariffs, and by continuing to charge and then retaining those tariff-related overcharges after the tariffs were adjudged unlawful and never owed, while failing to disclose that the embedded tariff costs were unlawful, that Defendant was pursuing and would recover a refund of those same duties from the federal government, and that Defendant would retain any such refund without reimbursing consumers.

78. Defendant alone possessed this material information and had knowledge of it—as demonstrated by its own lawsuits in the Court of International Trade—yet failed to disclose it to consumers at the point of sale. Defendant's omissions were likely to mislead a reasonable consumer acting reasonably under the circumstances.

79. Plaintiff and the New York Subclass need not prove reliance or Defendant's intent to state a claim under § 349.

80. Plaintiff and the New York Subclass suffered actual injury as a direct result of Defendant's deceptive acts and practices: they paid a tariff-related price premium—the difference between the prices they paid during the Relevant Time Period and the prices they would have paid

absent the unlawful IEEPA tariffs and Defendant's pass-through. There is a direct connection between Defendant's conduct and that pecuniary harm.

81. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and the New York Subclass are entitled to enjoin Defendant's unlawful acts and to recover their actual damages or fifty dollars, whichever is greater, together with, in the Court's discretion, treble damages up to one thousand dollars for Defendant's willful and knowing violation, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

a. Certifying this case as a class action on behalf of Plaintiff, the proposed Nationwide Class, and the New York Subclass, appointing Plaintiff as Class Representative, and appointing undersigned counsel to represent the Class and the New York Subclass;

b. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

c. Awarding Plaintiff and the Class actual, compensatory, statutory, and treble damages, as allowed by law, including under New York General Business Law § 349(h);

d. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

e. Awarding attorneys' fees and costs, as allowed by law, including under New York General Business Law § 349(h);

f. Awarding prejudgment and post-judgment interest, as provided by law;

g. Granting such other or further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the Class, demands a trial by jury as to all issues triable of right.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Deborah De Villa*
Deborah De Villa (NY # 5724315)
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Fax: (917) 336-0177
ddevilla@ahdootwolfson.com

Andrew W. Ferich*
Brian J. Devall *
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (310) 474-9111
Fax: (310) 474-8585
aferich@ahdootwolfson.com

Marc H. Edelson*
Eric Lechtzin*
**EDELSON LECHTZIN, LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Tel: (215) 867-2399
elechtzin@edelson-law.com

*Counsel for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming